Constantine H. Kavalaris v. Commissioner.
Constantine H. Kavalaris v. Commissioner
Docket No. 4209.
United States Tax Court
1946 Tax Ct. Memo LEXIS 293; 5 T.C.M. (CCH) 18; T.C.M. (RIA) 46005; January 16, 1946
Carl G. Christensen, Esq., 1515 Rand Tower, Minneapolis, Minn., and A. E. Bryngelson, Esq., for the petitioner. E. Chester Adams, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent has determined a deficiency in income tax in the sum of $406.51 for the calendar year 1940. The issue is whether the admitted gain of $13,259.81, realized by petitioner upon the sale of a mixed aggregate of assets, constituting a restaurant and liquor business carried on by him, is taxable as ordinary or capital gain. Findings of Fact The petitioner is a resident of Minneapolis, Minnesota. His return for the year 1940 was filed with the collector of internal revenue at St. Paul, Minnesota. In 1934 the petitioner acquired a cafe at 21 S. 8th Street, Minneapolis, and immediately made *294 application for and received from the city "on sale" licenses permitting the sale of liquors and beers at that address. Following this, petitioner operated a cafe and bar, known as the Silver Tray, at this address, until the year 1940. Liquor licenses by the City of Minneapolis, such as those obtained by the petitioner, are issued for a period of one year from February 1 to January 31, both dates inclusive. They are not subject to forfeiture except for cause, after the right to hearing, and may be reissued annually each February 1st upon application. The only cost to a licensee of an "on sale" liquor license is the annual fee of $1,100, payable in quarterly installments, required to be paid for the privilege for the period of the year for which issued. These licenses are subject to transfer upon application of the transferee, with the consent of the city council. Upon such transfer the transferee receives a similar license in his name for the remainder of the license year for which he pays only the unpaid quarterly installments for the balance of the license year. No quarterly installments paid by the licensee are refundable. The municipal ordinance authorizing the issuance of such *295 licenses provides that in the case of the death of the licensee, the right of operation under the license shall pass to his duly qualified executor or administrator. Following the original issuance to petitioner of the licenses in question, the petitioner in each year applied for and received renewals. In the City of Minneapolis liquor licenses, such as petitioner held, have a recognized value depending on the location of the premises for which the license is issued, and such licenses are bought from the holders thereof for substantial considerations conditioned upon the approval of the transfer by the city council. The City of Minneapolis is granted by the state the right to issue liquor licenses for 337 locations. Of these, 300 are in the downtown section, known as the "partrol district." The other 37 are outside of the patrol district and the value of these licenses is largely in excess of those issued for the congested downtown area. The licenses issued petitioner were for one of the 37 locations outside of the patrol district. On April 24, 1940, the petitioner and one Alfred A. Sleizer executed an "escrow agreement" providing for the sale to the latter of all property, including *296 the licenses, furniture, fixtures, good will and inventory of merchandise and provisions, as of the delivery date, used in the operation of the cafe and bar business, known as the Silver Tray, for a consideration of $20,500. The agreement also contained a provision that the seller would not compete with the buyer in that business so long as he conducted it in its then location. The transfer to the seller of the consideration, placed in escrow, was contingent upon the approval by the city council of the transfer of the liquor licenses held by petitioner and which had been reissued to petitioner within the 6 months preceding the transfer. Application was duly made by Sleizer for approval of the transfer of these licenses to him. The transfer was thereupon approved, the contract of conveyance carried out, and the aggregate consideration of $20,500 was paid to petitioner. The furniture, fixtures, equipment and inventory sold had a depreciated cost at that time of $4,918.64, and a fair market value of $4,000. The parties are in agreement that the gain realized upon the sale was in the sum of $13,259.81. This gain, petitioner, on his return for that year, treated as capital gain and *297 taxable to the extent of 50 per cent. Respondent, in determining the deficiency, treated the gain as ordinary in character, taxable in its full amount. Opinion Since 1934 the petitioner had been the owner and operator of a cafe and restaurant, known as the Silver Tray, in the City of Minneapolis. In 1940 he sold this business including "all personal property, fixtures, licenses, good will, goods, wares, merchandise, supplies on the premises aforedescribed, as of the date of April 22, 1940 * * *," in an aggregate, for the sum of $20,500. The agreed profit on the transaction was $13,259.81. The computation of this profit results from the deduction from the gross receipts of the sale, $20,500, of the sum of two items, (a) depreciated or unrecoverable costs of depreciable assets, $4,918.64, and (b) the costs of the sale, $2,321.55. The petitioner reported this gain for income tax purposes for 1940 as capital gain and therefore taxable only to the extent of 50 per cent thereof under section 117 of the Internal Revenue Code. In determining the contested deficiency respondent treated the entire profit as ordinary gain and taxed it in its entirety. The position *298 of the petitioner is, generally, that (a) the whole profit was realized on the sale of his liquor and beer licenses and (b) that these licenses constituted capital assets held for more than 6 months within the purview of section 117 of the Code. Respondent answers (1) that the licenses were not "property" and therefore not capital assets within the meaning of section 117, (2) that if they were "property" and within the purview of that section, they had not been held for more than 6 months and that 100 per cent of the gain on their sale was thus taxable under subsection 117 (b), I.R.C., and (3) that there is no possible way to allocate the consideration received in the sale among the several subjects of that sale. One essential factual premise to support petitioner's legal position is that the admitted gain was realized on the sale of renewal rights of the petitioner. Does the record establish that premise? This record is woefully deficient. The "on sale" liquor license which the petitioner transferred must have been acquired on February 1 of 1940, under the terms of the ordinance. This was, therefore, less than 6 months from April 24, 1940, the date of its *299 transfer. It is true that his original license was issued in 1934 and had been renewed for each succeeding year to and including that beginning February 1, 1940. The transfer of the license in April of 1940 entitled the purchaser to sell liquors as a licensee from that date throughout the balance of the year ending January 31, 1941. It may be argued that the difference between the aggregate consideration paid, $20,500, and the depreciated cost of the physical personal property, $4,918.64, is so large as to carry the reasonable inference that all or substantially all of that difference was paid by the purchaser for renewal rights in the license. But, the aggregate for which the unit consideration was paid included, in addition to the licenses and physical assets, the good will of the business which had been built up over the period from 1934, and the contract of the petitioner that he would not compete with the buyer, so long as the purchaser continued the business in the same premises. So far as is here revealed, all of the consideration received in connection with those two items was gain. It can not be assumed that these items did not absorb a very large part of the consideration. *300 Moreover, on this record, it is not beyond the bounds of reason to say that the profits of such a business, located in an advantageous location, for the 9-month period remaining in the license year of the purchaser would not have been very considerable and sufficiently attractive to warrant the payment of a sizable consideration therefor. In fact the evidence, if such it may be called, is in substance limited to the fair market value of the "liquor license," and this is wholly unconvincing. The only evidence of the existence of a custom and practice to renew licenses is the succeeding renewals of petitioner's licenses. That, we think, is insufficient to establish such a custom and practice. Nor is the evidence of a market or the fair market value of renewal rights to the license satisfactorily proven. Whatever the situation was in other cases can not in any event be helpful in consideration of this record. The petitioner, we think, on this record, has failed to establish error in the respondent's determination. Decision will be entered for the respondent.